# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 17-cv-60322-BLOOM/Valle

ANIBAL ANTONIO AGUILAR FERNANDEZ,

      Plaintiff,

v.

WINN-DIXIE STORES, INC.,

      Defendant.

_____/

## <u>ORDER</u>

**THIS CAUSE** is before the Court upon Defendant's Amended Motion for Final Summary Judgment as to Count I, ECF No. [48], (the "Motion"). The Court has carefully reviewed the Motion, the record, all supporting and opposing filings, the exhibits attached thereto, and is otherwise fully advised. For the reasons that follow, Defendant's Motion is granted.

## I.  BACKGROUND

Plaintiff Anibal Antonio Aguilar Fernandez ("Plaintiff" or "Fernandez") was an employee of Defendant Winn-Dixie Stores, Inc. ("Defendant" or "Winn-Dixie"). As further explained below, Plaintiff claims that Winn-Dixie terminated him after he reported several violations of the Fair Labor Standards Act ("FLSA") to management and to Defendant's hotline. Winn-Dixie, on the other hand, contends that it terminated Plaintiff for theft of store merchandise in violation of its policies. Plaintiff's Complaint contains a single count of retaliation in violation of 29 U.S.C. § 215(a)(3).[1]  *See* ECF No. [1]. In its Motion, Defendant argues that

---

[1]  The Court previously dismissed Plaintiff's claims under Count II, finding they were barred by the statute of limitations under the Florida Whistleblower Act. *See* ECF No. [30].

Plaintiff cannot prove the *prima facie* elements of an FLSA retaliation claim.  *See* ECF No. [48].

Plaintiff has since filed a Response in opposition and Defendant has filed a Reply.  *See* ECF Nos.

[50] and [52].  The Motion is now ripe for review.

    1.    <u>Winn-Dixie Policies</u>

Winn-Dixie is the owner and operator of a regional chain of grocery stores located in

Florida and Georgia.  *See* ECF No. [48] at ¶ 1.[2]  Defendant's Associate Handbook sets forth its

policies, procedures and benefits for all employees.[3]  *Id.* at ¶ 2.  One such policy contained

within Winn-Dixie's Associate Handbook is its Open Door policy, which states:

> We strive to create an environment founded in fairness and respect where Associates may talk freely with members of the management staff. Associates are encouraged to bring questions, suggestions, or complaints to their Supervisor. While we cannot guarantee that we will always provide you with the answer that you want, your questions, suggestions, or complaints will be discussed openly and given fair consideration. Because we are interested in all of our Associates' success and happiness with us, our Company has developed an Open Door Policy to enable Associates to comfortably address their concerns. We understand that in any business environment, differences of opinion may occur. Before these differences become major issues, please follow our Open Door Policy, which consists of three steps outlined below:
>
> Step One: Discuss your concerns with your immediate Supervisor. It is their responsibility to listen to your concerns and to do their best to resolve them, if possible.
>
> Step Two: If your immediate Supervisor has not answered or satisfactorily addressed your concerns within a period of seven days, discuss your concerns with a second level Manager.

---

[2]    To the extent that Plaintiff did not dispute portions of Defendant's Statement of Material Facts, the Court cites directly to Defendant's Statement for ease of reference.

[3]    In his Response to Defendant's Statement of Material Facts, Plaintiff repeatedly disputes references to Defendant's written policies by arguing that Defendant violated such policies.  This argument, however, does not dispute the existence of the policy.  It only disputes whether the policy was followed.  In paragraphs 2, 3, 5, 13, and 18, Defendant only refers the Court to the existence of certain policies without any statement that the policies were properly followed.  As a result, Plaintiff failed to present any facts to dispute the *existence* of the policies discussed in paragraphs 2, 3, 5, 13, and 18.

> Step Three (Alternate Step): If for any reason you prefer to discuss your concerns with a Human Resources Representative, you may contact your department, facility, or Regional Human Resources Representative. They will be happy to listen to your concerns and address them accordingly.
>
> An Associate may also call the Winn-Dixie Involved Associate Line ("W-DIAL") at 1-877-919-3425. This is a confidential reporting system which can be used anonymously and is accessible via the internet or by phone. Management will not fire, demote, harass or otherwise "retaliate" against an individual for utilizing the Open Door Policy or calling the "W-DIAL" at 1-877-919-3425.

*Id.* at ¶ 3. Defendant's Associate Relations System records any reports, whether to a manager, human resources representative or W-DIAL, and forwards such reports to the corporate headquarters to be addressed and investigated as necessary. *Id.* at ¶ 4. Defendant also has policies in place to ensure its compliance with the FLSA. *Id.* at ¶ 5. Such policy provides: "It is each Associate's responsibility to properly record all hours worked. By clocking in and out, Associates are acknowledging that they have properly recorded their hours. Associates may not perform any work off the clock. Failure to properly record all hours will result in disciplinary action, up to and including termination." *Id.*

During Plaintiff's most recent employment with Defendant in 2013 and 2014, Defendant utilized Workbrain software to record and manage employee time.[4] *Id.* at ¶ 6. When employees

---

[4] In his Response, Plaintiff disputes the admissibility of certain portions of the declaration of Kevin Willis. Plaintiff argues that these statements are not based upon his personal knowledge as Mr. Willis was not employed with Defendant during 2013 and 2014. However, as Defendant explains, Mr. Willis is not submitting the declaration in his individual capacity, but is instead submitting the declaration as Defendant's corporate representative pursuant to Federal Rule of Civil Procedure 30(b)(6). *See* ECF No. [52] at 7. Defendant previously designated Mr. Willis to testify as its corporate representative at Winn-Dixie's deposition on November 8, 2017 and does so again at the summary judgment stage. *Id.* at 7, n. 4. As a result, Mr. Willis's Declaration is submitted on behalf of the corporation and is based on the knowledge of the corporation. "[I]t is a fact that a corporation has no mouth with which to speak other than that of its representatives." *Atl. Marine Fla., LLC v. Evanston Ins. Co.*, No. 3:08-CV-538-J-20TEM, 2010 WL 1930977, at *2 (M.D. Fla. May 13, 2010) (quoting *ABN Amro Mortgage Group, Inc. v. Maximum Mortgage, Inc.*, No. 1:04cv492, 2006 WL 2598034, *7 (N.D. Ind. Sept. 8, 2006)). Thus, "[i]t is not necessary that the corporate representative have direct, personal knowledge of each and every fact discussed in her affidavit or deposition." *Harrington v. RoundPoint Mortg. Servicing Corp.*, No.

clocked in and out during their shift, they would log into Workbrain at the punch station computer in the front or rear of the store, which electronically recorded such information. *Id.* at ¶ 7. To clock in, employees selected "Begin Shift" on the computer and typed in their employee identification number. *Id.* Similarly, to clock out, employees selected "End Shift" and re-entered their employee identification number. *Id.*

At Winn-Dixie, every associate receives a paid fifteen-minute rest break for each continuous four-hour work period and hourly associates who work a continuous shift of five hours or more are allowed an unpaid thirty-minute meal break. *Id.* at ¶ 8. Defendant requires that employees clock in and out for their rest breaks and meal breaks. *Id.* The Workbrain system does not allow any employees to clock in early or late for their scheduled shift without a manager override. *Id.* at ¶ 9. Although employees can clock out of the system without a manager override, any employee leaving early without manager approval is subject to termination. *Id.* at ¶ 10. Within the store, the only employees who have access to Workbrain

---

215CV322FTM38MRM, 2017 WL 1331072, at *3 (M.D. Fla. Apr. 11, 2017) (quoting *Atl. Marine*, 2010 WL 1930977 at *2). *See also Cargo Airport Servs. USA, LLC v. Transcarga Int'l Airways, C.A., Inc.*, No. 17-20768-CIV, 2017 WL 4898292, at *2 (S.D. Fla. Oct. 27, 2017) ("An affidavit submitted by a corporate representative in support of summary judgment is properly considered when the corporate representative expressly verifies that the matters stated therein are based on his own personal knowledge gained through review of business records."). Here, not only did Defendant previously designate Mr. Willis as its corporate representative at the deposition of Winn-Dixie, but also, in an abundance of caution, Defendant submitted a supplemental declaration from Mr. Willis in which he confirms that the statements made in his original Declaration were based upon his personal knowledge of Defendant's corporate policies as a six-year employee and his review of all such policies and business records. *See* ECF No. [52-2]. Based on the foregoing, the Court concludes that Mr. Willis's declaration can be considered for purposes of summary judgment.

Other than dispute the admissibility of Mr. Willis's declaration, Plaintiff did not present any facts to contradict or rebut the factual statements asserted in paragraphs 6-11, 15-16, 23-24, and 39-44. *See* ECF No. [50] at ¶¶ 6-11, 15-16, 23-24, and 39-44. Having determined that the statements within these paragraphs are admissible for purposes of summary judgment, are supported by the declaration of Kevin Willis, and have not otherwise been contradicted, the Court finds that the statements within these paragraphs are undisputed.

and permission to make changes to employee time records are the salaried staff members consisting of the Store Director, Assistant Store Director, Service Area Manager or Fresh Manager. *Id.* at ¶ 11. When employee time records are changed, such changes are recorded in Workbrain, revealing the identity of the person who made the edits, the edits made, and the date and time of the edits. *Id.* According to Defendant's policies, "[i]f an Associate believes their time has not been properly recorded or has been altered, or that their pay is not correct, it is the Associate's responsibility to notify their Manager. If for any reason an Associate does not wish to discuss the situation with their Manager, they may contact Human Resources or call the 'W-DIAL' at 1-877-919-3425." *Id.* at ¶ 12.

With regard to theft policies, "[i]nternal theft accounts for a large percentage of inventory shrink in the grocery industry." *Id.* at ¶ 15. Defendant's internal theft strategy is primarily prevention; however, if prevention does not work, its Asset Protection Department becomes actively involved in detecting, investigating, and resolving any internal theft cases. *Id.* The Asset Protection Department is Defendant's authorized investigative entity and all internal and vendor theft investigations are coordinated and managed through this department. *Id.* Defendant's theft policy indicates it "has a Zero Tolerance policy for individuals involved in acts of theft from the Company" and "[a]ny Associate engaged in theft-related activity will be terminated and prosecuted if all of the statutory requirements (elements of theft) are met." *Id.* at ¶ 16.

2.  Plaintiff's Employment

Plaintiff began working for Winn-Dixie in February of 2007 until May of 2007 at the store in Miami Lakes. *See* ECF No. [48] at ¶ 17. On his first day of work for Winn-Dixie in

2007, Plaintiff participated in a New Hire Orientation and Training, during which he was informed of Winn-Dixie's rules, policies and procedures, including its Shrink Policy Statement, Associate Policy Awareness Confirmation, Wage and Hour Acknowledgment and Winn-Dixie Involved Associate Line confirmation. *Id.* As a result of his training, Plaintiff was aware that he "must never participate in any activity that causes a loss to" Winn-Dixie, including merchandise theft, which would result in termination. *Id.* at ¶ 18. Plaintiff also knew he had a duty to report any violations of rules or policies that he observed, and that he could make a confidential report to Winn-Dixie's hotline, W-DIAL. *Id.* at ¶ 19.

Plaintiff ceased working for Winn-Dixie in May of 2007 and then resumed working for Defendant at the Sebring, Florida store in March of 2008. *Id.* at ¶ 20. Once again, he participated in a New Hire Orientation, which reaffirmed his awareness of Winn-Dixie's Shrink Policy Statement, Associate Policy Awareness Confirmation, Wage and Hour Acknowledgment and Winn-Dixie Involved Associate Line confirmation. *Id.* However, he only worked at the Sebring store for a brief period of time. *Id.* Plaintiff again resumed employment with Winn-Dixie on February 12, 2013 until his termination on October 17, 2014. *Id.* at ¶ 22. During this period, he worked at store #250 as a full-time meat cutter. *Id.* From April 10, 2014 until January 18, 2017, Pedro Leon ("Mr. Leon") was the Store Director of store #250.

3.    The Alleged FLSA Violations

According to Plaintiff, Mr. Leon routinely told him to punch out and continue working off the clock so that his hours would not reflect any overtime.[5]  *See* ECF No. [50-1] at ¶¶ 4-5.

---

[5]    Defendant disputes that any record evidence supports this statement, arguing Plaintiff "testified that, in regard to punching out, Mr. Leon only directed him to punch out for lunch." ECF No. [52] at ¶ 51. Not only did Plaintiff supply an affidavit under oath in which he attested to being forced to punch out and continue working, but Plaintiff also testified as much during his deposition. Plaintiff testified that

For example, on occasions when Plaintiff was the only meat cutter in the meat department, Mr. Leon told him to punch out and finish all of the department's work. *Id.* During the first week of October of 2014, Plaintiff approached Mr. Leon to address various complaints he had with the company and its management. *Id.* at ¶ 6. Specifically, Plaintiff told Mr. Leon he did not want to work off the clock and be denied overtime compensation.[6] *Id.* at ¶ 7. Mr. Leon told Plaintiff to quit. *Id.* at ¶ 8. He also said his wife was a lawyer so he would not suffer any repercussions. *Id.*

Although the exact period of time is unclear, Plaintiff also discovered that there were discrepancies with the hours reported on his pay stubs compared to his personal tally of hours worked. *See* ECF No. [50-1] at ¶ 9; ECF No. [39-1] at 74. He then approached Melissa Lawrence ("Ms. Lawrence") to address the discrepancies. *Id.* at ¶ 10. As further explained below, sometime after Plaintiff reported the alleged FLSA violations, Plaintiff's employment at Winn-Dixie was terminated. *See* ECF No. [50-1] at ¶¶ 12-30.

4. <u>Plaintiff's Termination</u>

On October 16, 2014, Mr. Leon reported to the Asset Protection Department that he observed Plaintiff exiting the store with bags of unpaid merchandise. *See* ECF No. [48-1] at ¶

---

Mr. Leon would tell him to "[p]unch out for lunch and finish your job" and "you can't work overtime, finish that, but you've got to punch out." ECF No. [52-1] at 44. On a regular basis, Mr. Leon would tell Plaintiff to "[f]inish, punch out, but continue working." *Id.* Thus, there is ample evidence in the record to support Plaintiff's statement.

[6] Defendant argues "[t]here is no record of Fernandez ever making any complaint about being forced to work off the clock during his employment with Winn-Dixie." ECF No. [52] at ¶ 52. This statement completely ignores Plaintiff's affidavit in which he specifically attests to this fact under oath. In addition, the Court notes that page 83 of Plaintiff's deposition asks: "Q. In fact, in your complaint you allege that the first time or the only reporting that you've alleged in your complaint is that in the first week of October 2014 you approached Mr. Leon and reported these things, . . ." ECF No. [52-1] at 83. Significantly, Defendant's Motion omitted pages 84 through 85 of Plaintiff's deposition transcript. The Court has no way of determining how Plaintiff responded to this question without the benefit of the transcript pages that follow. In addition, Plaintiff testified under oath that he reported the alleged FLSA violations to Defendant's hotline. *See* ECF No. [39-1] at 82-83. Contrary to Defendant's statements, there is evidence in the record of Plaintiff's reports of the alleged FLSA violations.

20. Following this report, Asset Protection Coordinator Juan Frank Morejon ("Mr. Morejon") began an investigation into Plaintiff and any potential losses he may have caused Winn-Dixie.[7] *Id.* Winn-Dixie uses digital video surveillance systems in its stores. *Id.* at ¶ 22. Mr. Morejon pulled the video surveillance from store #250 for dates commencing on July 16, 2014 through October 16, 2014. *Id.* at ¶ 21. Although Plaintiff's affidavit attests that he never stole any food or merchandise, Winn-Dixie's review of the video surveillance led it to conclude that Plaintiff removed merchandise without paying for it on nine occasions. *Compare* ECF No. [50] at ¶ 45 *with* ECF No. [39-1] at ¶ 23. Significantly, Plaintiff does not deny that he is the person depicted in the surveillance videos. *See* ECF No. [50] at ¶ 38 ("It is true that Fernandez did not deny that he is the individual depicted.").

On October 17, 2014, at approximately 3:29 p.m., Mr. Morejon arrived at store #250 to review the investigation video details. *See* ECF No. [39-1] at ¶ 24. Based on Mr. Morejon's investigation, he determined that Plaintiff's actions were fraudulent and contacted Regional Asset Protection Manager, Christine Cunningham ("Ms. Cunningham"), to inform her of the results before requesting an interview with Plaintiff. *Id.* After he spoke with Ms. Cunningham, at approximately 4:14 p.m., Ms. Lawrence brought Plaintiff to the Associate Development Center room. Mr. Morejon interviewed Plaintiff with Ms. Lawrence acting as a witness. *Id.* at ¶ 25. At 4:41 p.m., Defendant contacted the Miramar Police Department and Plaintiff was arrested for theft. *Id.* at ¶ 26.

---

[7]      Plaintiff objects to Defendant's reliance upon the Associate Theft – Merchandise Case Profile Report, ECF No. [39-17], as inadmissible hearsay. Regardless of whether Defendant properly laid the foundation to satisfy the business records exception, Mr. Willis attested to the fact that Winn-Dixie's "video surveillance showed Fernandez removing merchandise from the store without paying for it on at least nine occasions." *See* ECF No. [39-1] at ¶ 23. His declaration likewise attests to much of the information contained within Winn-Dixie's records, including the details of Winn-Dixie's internal investigation. *See* ECF No. [39-1] at ¶¶ 20-26.

Plaintiff's employment at Winn-Dixie was terminated for theft on the date of his arrest, October 17, 2014. *Id.* Prior to his termination, it is undisputed that Plaintiff was never disciplined, reprimanded, or written up. *See* ECF No. [50-1] at ¶ 2-3. Defendant admits that Plaintiff was not terminated for any performance-related issues. *See* ECF No. [52] at ¶ 50. It is undisputed that Plaintiff was later acquitted at trial for the petit theft charges filed against him. However, as explained below, this ultimate disposition is not relevant to the Court's retaliation analysis.

## II.    LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including, *inter alia*, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F. 3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130,

1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. But even where an opposing party neglects to submit any alleged material facts in controversy, a court cannot grant summary judgment unless it is satisfied that all of the evidence on the record supports the uncontroverted material facts that the movant has proposed. *See Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004).

## III. DISCUSSION

Plaintiff's claim is for retaliation under the FLSA, which makes it unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or

related to this chapter . . ."  29 U.S.C. § 215(a)(3).  When an FLSA retaliation claim is based upon circumstantial evidence, as is the case here, courts must apply the familiar *McDonnell Douglas* burden-shifting framework.  *See Wolf v. Coca-Cola Co., Inc.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000); *Brown v. Alabama Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010) ("When a plaintiff offers only circumstantial evidence to prove her Title VII claim, as Plaintiff does here, we employ the burden-shifting framework established by the Supreme Court in *McDonnell Douglas* . . .").  This requires the following evidence to prove a *prima facie* case of retaliation: "(1) [the employee] engaged in activity protected under [the] act, (2) [the employee] subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action."  *Id.* (quoting *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 208-09 (10th Cir. 1997)).  If the employee satisfies the *prima facie* case, the burden shifts to the employer to demonstrate a legitimate, non-retaliatory reason for the adverse action.  *Id.*  From there, the burden shifts back to the employee to prove that the reason given for the adverse action is merely pretext.  *Id.*  Ultimately, to establish the third element of a retaliation claim – causation – the employee "must prove that the adverse action would not have been taken 'but for' the assertion of FLSA rights."  *Id.* (citing *Reich v. Davis*, 50 F.3d 962, 965-66 (11th Cir. 1995)).

### 1. Protected Activity

The FLSA makes it unlawful for an employer to retaliate against an employee who has "filed any complaint . . . under or related to this chapter."  29 U.S.C. § 215(a)(3).  "Unofficial, oral complaints are protected activity under the FLSA."  *Henderson v. City of Grantville, Ga.*, 37 F. Supp. 3d 1278, 1282–83 (N.D. Ga. 2014) (citing *EEOC v. White & Son Enters.*, 881 F.2d

1006, 1011 (11th Cir. 1989)); *see also Kasten v. Saint–Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1335 (2011) (finding that the phrase "filed any complaint" in the FLSA's anti-retaliation provision includes "oral complaints, as well as . . . written ones" provided the complaint is "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection").

The Court finds that Plaintiff's evidence creates an issue of fact as to whether he engaged in protected activity under the FLSA. The retaliation claim is premised upon his complaints of two different forms of alleged FLSA violations: (1) he was forced to punch out and continue working off the clock to prevent payment of overtime wages and (2) management was altering his time records. *See* ECF No. [1]. In support of Defendant's argument that Plaintiff did not engage in protected activity, Winn-Dixie argues that "[t]here exists *no evidence* in this record that Fernandez ever made any such complaint." *See* ECF No. [48] at 15 (emphasis in original). According to Defendant, the lack of records documenting such complaints is the equivalent to a complete lack of evidence. Such an argument ignores Plaintiff's deposition testimony and sworn affidavit in which he indicated that he approached Ms. Lawrence, the Assistant Store Director, and reported discrepancies with the number of hours reported on his pay stubs compared to the number of hours he actually worked. *See* ECF No. [50-1] at ¶ 9; ECF No. [39-1] at 74. This likewise ignores Plaintiff's testimony in which he indicated that, during this timeframe, he called Winn-Dixie's hotline two to three times to report the FLSA violations. *See* ECF No. [39-1] at 83, 86. Moreover, Defendant's argument equally ignores Plaintiff's affidavit in which he states he approached Mr. Leon during the first week of October of 2014 to address various complaints,

including complaints about working off the clock and being denied overtime pay.[8]  *See* ECF No. [50-1] at ¶ 7.  Although Winn-Dixie argues "[t]here is no credible evidence that Fernandez made any complaint to [] Winn-Dixie upper management," it would be inappropriate to judge the credibility of evidence at the summary judgment stage.  Based on the record evidence, the Court concludes that an issue of fact exists as to whether Plaintiff engaged in protected activity under the FLSA.

### 2.  Adverse Employment Action

The Eleventh Circuit has defined an adverse employment action as "a serious and material change in the terms, conditions, or privileges of employment," *Davis v. Town of Lake Park, Fla.,* 245 F.3d 1232, 1239 (11th Cir. 2001), including "termination, failure to hire, or demotion." *Blue v. Dunn Const. Co., Inc.,* 453 F. App'x 881, 884 (11th Cir. 2011) (citing *Crawford v. Carroll,* 529 F.3d at 970).  Defendant concedes that Plaintiff's termination is an adverse employment action.  *See* ECF No. [48] at 14 ("Winn-Dixie concedes that Fernandez suffered an adverse action, which was his termination from Winn-Dixie on October 17, 2014").  Therefore, it is undisputed that Plaintiff satisfies the second element of a retaliation claim.

---

[8]     In its Reply, Winn-Dixie argues that this Court cannot consider Plaintiff's sworn affidavit in connection with the Motion because it is a "self-serving affidavit that directly contradicts his prior sworn deposition testimony." ECF No. [52] at 4.  Federal Rule of Civil Procedure 56 specifically authorizes the use of affidavits or declarations to demonstrate that a fact is or is not disputed.  *See* Fed. R. Civ. P. 56(c).  The cases upon which Defendant relies in support of this argument either involved "sham" affidavits or conclusory affidavits devoid of any facts.  As to Defendant's argument that Plaintiff submitted a "sham" affidavit that contradicts his deposition testimony, the Reply fails to point out a single inconsistency between Plaintiff's deposition testimony and his affidavit.  The Court notes that Defendant only provided excerpts of Plaintiff's deposition, making it difficult at times to understand the complete context of Plaintiff's testimony.  And, from the Court's review of the excerpts, no such inconsistencies were found.  Thus, in the absence of any proof that there are true inconsistencies between the testimony and the affidavit, the Court declines to find that Plaintiff's affidavit submitted in opposition to the Motion is a "sham."  In addition, Defendant relies upon a line of cases that decline to consider self-serving conclusory affidavits devoid of facts.  However, Plaintiff's affidavit is not conclusory in nature and instead provides

### 3.    Causation

Although Plaintiff can survive summary judgment under the first two prongs of his retaliation claim, his inability to prove causation is fatal.  To satisfy his prima facie burden, Plaintiff attempts to demonstrate causation by showing temporal proximity, but in order to evidence causation, such proximity must be "very close."  *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action. . . . But mere temporal proximity, without more, must be 'very close.'" (internal citations omitted)); *see also Schoebel v. Am. Integrity Ins. Co. of Florida*, No. 8:14-CV-426-T-27AEP, 2015 WL 4231670, at *2–4 (M.D. Fla. July 10, 2015) ("Generally, close temporal proximity between an employee's protected conduct and an adverse employment action is circumstantial evidence giving rise to an inference of causation.").  If there is a delay of more than three months between the protected activity and the adverse employment action, then "the temporal proximity is not close enough, and the plaintiff must offer some other evidence tending to show causation."  *Henderson v. FedEx Express*, 442 F. App'x 502, 506-07 (11th Cir. 2011).  In addition, the United States Supreme Court has clarified that in cases alleging employment retaliation, a plaintiff must prove that "the unlawful retaliation would not have occurred in the absence of an alleged wrongful action or actions of the employer," meaning an employee must prove "but-for causation."  *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013) (holding that evidence showing

---

detailed facts that appear to be consistent with the limited deposition testimony contained within the record, making consideration of this evidence proper.

retaliation was a motivating factor in the adverse employment action is insufficient to satisfy a *prima facie* case).

Here, Plaintiff attempts to satisfy the temporal connection by arguing that he complained about the FLSA violations to Mr. Leon during the first week of October of 2014 and was then terminated on October 17, 2014. Without more, such close temporal proximity would appear to create an inference of causation. However, a close temporal connection may become severed when there is an intervening act of misconduct that breaks the causal link between the protected activity and the adverse employment action. *Henderson*, 442 F. App'x at 506. Courts have found that even cases with "very close" temporal connections of one month or even three days will not satisfy the required but-for causation requirement when there is evidence of an intervening act of misconduct. *See Diaz v. Florida*, 219 F. Supp. 3d 1207, 1220 (S.D. Fla. 2016) (granting summary judgment for employer when it was undisputed that, between the time of the alleged protected activity and the time of the termination, "[the plaintiff] was suspected of attempted theft of state property, which was an intervening act of misconduct"); *Schoebel*, 2015 WL 4231670 at *3 (granting summary judgment because an intervening act of misconduct, which consisted of sending inappropriate emails, was sufficient to break the causal connection). The Court's review of the record reveals that Plaintiff reported the alleged FLSA violations to Mr. Leon during the first week of October and was then suspected of stealing store merchandise on October 16, 2014. On the following day, Plaintiff was terminated. Although the temporal proximity between the protected activity and the termination is "very close," the suspected theft of store property constitutes an intervening act that breaks the causal chain. As a result, Plaintiff

fails to show the requisite but-for causation necessary to establish a *prima facie* case of retaliation.[9]

Having found that Plaintiff failed to satisfy the required but-for causation, the Court need not reach the pretext stage of the analysis. *Henderson*, 442 F. App'x at 507. But even if Plaintiff demonstrated the existence of causation, the Court finds that Plaintiff is unable to prove that Defendant's proffered reason for his termination – theft – was mere pretext. As a preliminary matter, Plaintiff does not dispute that Defendant's asserted non-retaliatory reason for his termination is sufficient. *See* ECF No. [50] at 16. Instead, Plaintiff argues that sufficient evidence exists to prove this explanation was pretextual. The Court's analysis will, therefore, focus on the existence of pretext.

In support of his position, Plaintiff attempts to offer evidence of other comparators – evidence that other employees also shopped during store hours without any adverse consequences. Plaintiff's comparison to such individuals is like comparing apples and oranges. "A comparator is an employee *similarly situated* to the plaintiff in *all relevant respects*." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1280 (11th Cir. 2008) (emphasis added). "The quantity and quality of the comparator's misconduct must be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Id.*

---

[9] In his Response, Plaintiff argues that "[r]egardless of whether any of [a p]laintiff's claim [sic] require but-for causation, he may certainly maintain alternative, inconsistent theories," citing to *Allen v. S. Comm'cs Servs., Inc.*, 963 F. Supp. 2d 1242, 1254 (N.D. Ala. 2013). *See* ECF No. [50] at 15. Plaintiff reasons that summary judgment cannot be granted on his FLSA retaliation claims "simply due to the fact that he pled an alternative inconsistent theory." *Id.* at 16. Not only does this conclusory argument fail to explain how Plaintiff satisfied but-for causation, but Plaintiff has not pled any alternative, inconsistent theory of liability. The case upon which Plaintiff relies for this argument, *Allen*, alleged alternative, inconsistent retaliation theories under both the FLSA and Title VII and the plaintiff could not be required to choose one theory at the summary judgment stage. In contrast, Plaintiff has alleged a single theory of liability – FLSA retaliation, making this argument inapplicable and *Allen* distinguishable.

"Misconduct merely 'similar' to the misconduct of the disciplined plaintiff is insufficient." *Id.* "On-the-ground determinations of the severity of different types of workplace misconduct and how best to deal with them are exactly the sort of judgments about which we defer to employers." *Flowers v. Troup Cty., Ga., Sch. Dist.*, 803 F.3d 1327, 1341 (11th Cir. 2015). Defendant's stated reason for terminating Plaintiff was theft of merchandise, not shopping during store hours. Plaintiff does not present any evidence that there were other employees suspected of theft who did not suffer any adverse employment actions. Thus, Plaintiff's proffered comparators are not sufficiently similar to establish pretext.

"To show pretext in the absence of a comparator, a plaintiff must adduce evidence not only that the employer's proffered reason is false, but also that unlawful retaliation was the employer's true motive." *Feise v. N. Broward Hosp. Dist.*, 683 Fed. App'x 746, 752 (11th Cir. 2017) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 514-15 (1993)). Specifically, Plaintiff must show either "that [Winn-Dixie's] proffered reason is unworthy of credence or . . . that [retaliation] more than likely motivated [Winn-Dixie] to fire [him]." *Id.* (quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)). Based on the undisputed record evidence, a reasonable jury would be unable to find that Winn-Dixie's reason for terminating Plaintiff — internal theft—was unworthy of credence or that retaliation for raising FLSA violations more likely than not motivated Winn-Dixie to terminate him.

Plaintiff challenges Defendant's reason for terminating him by arguing that "the facts in this case seriously undermine this explanation . . . [as Plaintiff] never stole anything." However, "[t]he inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." *Id.* at 753

17

(quoting *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010)). It is undisputed that Winn-Dixie had detailed written policies that prohibited internal theft and that a violation of this policy was cause for immediate termination. Plaintiff argues that he did not violate this rule because he did not steal, but he does not dispute the existence of this internal theft policy. In *Feise*, *supra*, the plaintiff did not dispute that her employer had a policy against sleeping on the job but instead argued she was not sleeping. *Id.* at 753. Affirming summary judgment in favor of the employer, the Eleventh Circuit stated that "an employer can hardly be said to have discriminated or retaliated against an employee if it terminated the employee based on a good faith belief that she violated a rule, even if the purported violation never actually occurred." *Id.* This case is no different. There is undisputed evidence that Winn-Dixie's Asset Protection Coordinator Mr. Morejon believed the surveillance video showed Plaintiff taking groceries from the store on nine different occasions without paying for them. In fact, Plaintiff does not dispute that he is the person depicted in the surveillance videos that Mr. Morejon reviewed as part of his internal theft investigation. Thus, regardless of whether Plaintiff actually stole the merchandise and regardless of whether Plaintiff was ultimately acquitted for the petit theft charges, no issue of fact exists as to whether Winn-Dixie's review of the surveillance video led it to believe that Plaintiff violated its internal theft policy. Courts cannot act as a "'super-personnel committee' that impermissibly decides for employers what conduct is sufficient to warrant termination." *Id.* at 753–54. And, although Plaintiff argues that Mr. Leon used "incomplete video excerpts" and "play[ed] 'Honest Iago' successfully enough to have Plaintiff arrested," Plaintiff does not proffer evidence that the complete video excerpts showed him paying for the merchandise. Plaintiff offers argument but has failed to present any evidence that

would allow a reasonable jury to find that Defendant's proffered reason for terminating him was pretextual. Without more, Plaintiff is unable to satisfy his burden to prove a claim for FLSA retaliation, requiring the entry of summary judgment in favor of Defendant.

## IV.    CONCLUSION

For the reasons stated herein, it is **ORDERED AND ADJUDGED** as follows:

1. Winn-Dixie's Amended Motion for Summary Judgment, **ECF No. [48]**, is **GRANTED**;

2. Pursuant to Federal Rule of Civil Procedure 58, Final Judgment in favor of Winn-Dixie will issue by separate order;

3. The Clerk shall mark this case **CLOSED**; and

4. Any pending motions are **DENIED AS MOOT**, any scheduled hearings are **CANCELLED**, and all pending deadlines are **TERMINATED**.

**DONE AND ORDERED** in Miami, Florida this 24th day of January, 2018.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record